IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 14, 2010

**STATE OF TENNESSEE v. TONY STEWART**

**Appeal from the Circuit Court for Madison County**
**No. 08-709      Roy B. Morgan, Jr., Judge**

**No. W2010-00133-CCA-R3-CD   -   Filed March 7, 2011**

The Defendant, Tony Stewart, was indicted for attempted first degree murder, aggravated assault, coercion of a witness, and misdemeanor evading arrest. After a jury trial, the Defendant was convicted of attempted second degree murder, aggravated assault, coercion of a witness, and misdemeanor evading arrest. In this appeal as of right, the Defendant contends that the evidence was insufficient to sustain his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, District Public Defender; and Susan D. Korsnes, Assistant Public Defender (at trial), attorneys for the appellant, Tony Stewart.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, attorneys for the appellee, State of Tennessee.

**OPINION**

At trial, the State presented proof that on September 1, 2008, the Defendant beat and stabbed the victim, Virginia Greer, outside the Regional Inter-Faith Association (RIFA) soup kitchen in Jackson, Tennessee. The victim testified that a few weeks prior to the attack, the Defendant approached her on the street, pointed his finger at her, and spoke to her "with an

attitude," so she stabbed him with a pair of scissors she kept in her purse. After she stabbed him, the Defendant chased her with a two-by-four until she was able to lock herself in a car. The victim never reported this prior incident to the police. The victim testified that on September 1, 2008, she was eating at the RIFA soup kitchen when the Defendant sat down at a table in front of her and said, "I'm going to get you." The victim immediately got up and went outside to call the police from a pay phone. However, the pay phone she was going to use had been removed. The victim was walking towards another pay phone location when she came across an acquaintance, Charles Merriwether. The victim asked Mr. Merriwether if she could use his cell phone, and he agreed.

The victim testified that she had just pressed the number nine when the Defendant came around the corner with a knife and said, "Oh, you want to cut somebody." The Defendant then stabbed her in the abdomen. The victim raised her arms to protect herself, and the Defendant cut the victim on her arm before she fell to the ground. As the victim attempted to get back up, the Defendant stabbed her in the back, kicked her, and beat her. The Defendant then ran from the scene, and the victim got up and chased after the Defendant, telling Mr. Merriwether to call the police. As the victim ran down the street, she approached F. D. Freeman and told him that the Defendant had stabbed her and that she could hardly breath. Mr. Freeman testified that he saw the Defendant carrying a metal object and that the Defendant told him "If you think you want to do something, you'll get the same thing." The victim then collapsed on the street, and Mr. Freeman stayed with her until the police arrived. At trial, the victim, Mr. Merriwether, and Mr. Freeman identified the Defendant as the attacker.

Officer Rochelle Staten of the Jackson Police Department was the first police officer to respond to the scene. Officer Staten testified that when she arrived on the scene, the victim was bleeding profusely and was having trouble breathing. Officer Staten radioed that the victim needed medical treatment. The victim was able to give Officer Staten a description of the Defendant, and Officer Staten went to search for the Defendant while another officer stayed with the victim. A few minutes later, Officer Staten was in her patrol car when she spotted the Defendant walking down the street. Officer Staten pulled over and got out of the car to stop the Defendant, when he "took off running." Officer Staten and several other officers gave chase and the Defendant was apprehended approximately a mile from where Officer Staten had left the victim. Officer Staten testified that when the Defendant was finally caught, he resisted arrest. Madison County Sheriff's Deputy Jason Maness testified that the Defendant stated repeatedly, "I wished I had killed the bitch" as he was being processed at the Madison County Jail.

The victim was taken to Jackson-Madison General Hospital where she was treated for a collapsed lung and multiple stab wounds. The victim's treating physician, Dr. Leslie

Stewart, testified that when the Defendant stabbed the victim in the abdomen, the blade punctured her right lung, causing the lung to collapse. Dr. Stewart testified that a collapsed lung is a life-threatening injury and "uniformly fatal unless treated." Dr. Stewart further testified that a wound to the abdomen, like the one suffered by the victim, is a life-threatening injury and is commonly referred to as an "assassin's wound" because of all the major organs, arteries, and blood vessels in that area of the body. In addition to treating the victim's collapsed lung and abdominal stab wound, Dr. Stewart also treated the victim for a stab wound on her back and "defensive wounds" on her arm. The victim spent three days in the hospital being treated for her injuries.

The victim, in addition to admitting that she had stabbed the Defendant a few weeks before the attack, also admitted at trial that she was incarcerated for violating her probation for convictions of simple drug possession and possession of drug paraphernalia. The victim admitted that at the time of the attack, she was a frequent drug user and that her only source of income was prostitution and hustling. The victim further admitted that the day before the attack she had smoked crack cocaine. However, the victim denied that her drug use the prior day had any impact on her the day of the attack. The victim also denied that she and the Defendant had been asked to leave the RIFA soup kitchen for causing "a ruckus." The victim further testified that she did not have any weapons with her that day and that she did not threaten the Defendant prior to his attack on her on September 1, 2008.

The trial court provided a jury charge on self-defense as requested by defense counsel and over the State's objection. The trial court found that the issue of whether the Defendant acted in self-defense was "a jury question." The jury convicted the Defendant of attempted second degree murder, aggravated assault, coercion of a witness, and misdemeanor evading arrest. The trial court merged the convictions for attempted second degree murder and aggravated assault. The trial court classified the Defendant as a career offender and sentenced him to 30 years for the attempted second degree murder conviction and a consecutive 12 years for the coercion of a witness conviction. The Defendant received a concurrent sentence of and 11 months and 29 days for the misdemeanor evading arrest conviction, for an effective 42-year sentence.

## ANALYSIS

The Defendant contends that the evidence was insufficient to support his convictions. The Defendant argues that he was acting in self-defense because of an incident between himself and the victim several weeks before and that "he had no choice but to retaliate against [the victim] that day." The Defendant fails to address how the evidence was insufficient to support his convictions for coercion of a witness and misdemeanor evading

-3-

arrest. The State responds that the evidence was legally sufficient to support the Defendant's convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

*1. Attempted Second Degree Murder*

Second degree murder is statutorily defined as the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). A person acts knowingly "when the person is aware that [their] conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). A person attempts to commit second degree murder when he or she acts with the intent to knowingly kill the victim and his or her conduct constitutes a substantial step toward the victim's death. Tenn. Code Ann. § 39-12-101(a)(3). The proof at trial established that the Defendant stabbed the victim with a knife multiple times, causing her lung to collapse, and kicked and beat her. The abdominal wound caused by the Defendant is commonly referred to as an "assassin's wound" because of its high probability of causing death. By stabbing the victim multiple times, the Defendant took a substantial step in a course of action that was reasonably certain to cause the victim's death.

Tennessee law provides that a person may use deadly force in self-defense when that person has a reasonable belief, based upon reasonable grounds, that there is an imminent, real danger of death or serious bodily injury. Tenn. Code Ann. § 39-11-611(b)(2). It is well established, under Tennessee law, "that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact." State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) (citing State v. Ivy, 868 S.W.2d 724, 727 (Tenn.

Crim. App. 1993)).  There was no proof at trial that the victim threatened or provoked the Defendant prior to this attack other than the stabbing episode weeks before the date of this attack.  Out of an abundance of caution the trial court instructed the jury on self-defense.  It was well within the jury's province to reject the Defendant's theory of self-defense.  The proof at trial supports the jury's rejection of the Defendant's self-defense theory and shows, as discussed above, that the Defendant attempted to commit second degree murder.  Accordingly, we conclude that the evidence was sufficient to support the Defendant's conviction for attempted second degree murder.

## 2. Aggravated Assault

Aggravated assault is statutorily defined as an intentional or knowing assault during which a deadly weapon is used or displayed.  Tenn. Code Ann. § 39-13-102(a)(1)(B).  An assault is defined as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another . . . ."  Tenn. Code Ann. § 39-13-101(a)(1).  A bodily injury "includes a cut, abrasion, bruise, burn or disfigurement, and physical pain . . . or impairment of the function of a bodily member, organ, or mental faculty."  Tenn. Code Ann. § 39-11-106(a)(2).  A deadly weapon is "anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury."  Tenn. Code Ann. § 39-11-106(a)(5)(A).  The proof at trial established that the Defendant intentionally or knowingly caused a bodily injury to the victim with a deadly weapon.  On the day of the attack, the Defendant told the victim he was "going to get" her and then followed her out of the RIFA soup kitchen where he then attacked her with a deadly weapon, a knife.  The Defendant stabbed the victim in the abdomen, cut her arms, stabbed her in the back, and kicked and beat her causing not merely bodily injury to the victim but life-threatening injuries.  As stated above, it was the jury's prerogative to reject the Defendant's claim of self-defense.  Accordingly, we conclude that the evidence was sufficient to support the Defendant's conviction for aggravated assault.

## 3. Coercion of a Witness

In order to sustain a conviction for coercion of a witness, the State must prove that the Defendant "by means of coercion, influence[d] or attempt[ed] to influence a witness or prospective witness in an official proceeding" to testify falsely or withhold truthful testimony or information.  Tenn. Code Ann. § 39-16-507(a).  Coercion includes a threat to "[c]ommit any offense."  Tenn. Code. Ann. § 39-11-106(a)(3)(A).  The purpose of Tennessee Code Annotated section 39-16-507 is to punish those "who, through coercion, impair the integrity or availability of witnesses who may be called to offer evidence at official proceedings."  Sentencing Comm'n Cmts.  This court has previously held that the statute applies to coercion of a prospective witness before an official proceeding has commenced.  State v. Myra S. Bikrev, No. M2001-02513-CCA-R3-CD, 2003 WL 1733580, at * 6 (Tenn. Crim. App. April

2, 2003). The statute's requirement of a "prospective witness in an official proceeding" refers to "an individual who, at some point after being threatened, might be a witness in an official proceeding concerning the relevant subject matter of the threat, whether or not the proceeding has actually been initiated at the time of the threat." Id. Additionally, the fact that this statute is listed in part 5 of chapter 16, title 39 dealing with "Interference with Government Operations" and not part 6 dealing with "Obstruction of Justice" illustrates the legislature's intent that coercion of a witness "embraces corrupt activity that may occur *before* [an] official proceeding commences." Id. (emphasis in original).

F. D. Freeman[1] testified that the victim approached him bloodied and stating that the Defendant had stabbed her. Mr. Freeman then saw the Defendant approaching with a metal object in his hand, and the Defendant told him, "If you think you want to do something, you'll get the same thing." The Defendant threatened to stab Mr. Freeman, a potential witness, if he attempted to do anything to assist or protect the victim. It is clear that the threat was intended to assist the Defendant in his flight from the scene. The Defendant's open-ended threat can be viewed as warning Mr. Freeman against taking any number of actions, from attempting to detain the Defendant until the police arrived to simply assisting the police by providing information about the Defendant. It can be readily inferred from the Defendant's threat that he "intended to influence [Mr. Freeman] against giving evidence or otherwise withholding truthful information" about the Defendant's attack on the victim. Bikrev, 2003 WL 1733580 at *6. The Defendant "was obviously attempting to frustrate police pursuit of [himself] as a suspect." Id. While this set of facts is not the typical factual background for a coercion of a witness conviction, the Defendant's actions, especially given the fact that they occurred at the scene of the crime, still meet the requirements of the statute. Accordingly, we conclude that the evidence was sufficient to support the Defendant's conviction for coercion of a witness.

*4. Evading Arrest*

To sustain a conviction for misdemeanor evading arrest, the State must prove that the Defendant intentionally fled "by any means of locomotion from anyone the [Defendant knew] to be a law enforcement officer if the [Defendant knew] the officer [was] attempting to arrest [him] or [he was] arrested [at the time of flight]." Tenn. Code Ann. § 39-16-603(a)(1). Officer Staten testified that she was in full uniform and in her patrol car when she spotted the Defendant. As Officer Staten exited her patrol car to approach the Defendant, he "took off running." Several officers chased the Defendant until he was eventually captured. Officer Staten testified that even after the Defendant had been caught he continued

---

[1]The indictment originally listed Virginia Greer as the witness threatened by the Defendant, however, prior to trial the indictment was amended to reflect that Mr. Freeman was the witness threatened by the Defendant.

to resist arrest.  Accordingly, we conclude that the evidence was sufficient to support the Defendant's conviction for misdemeanor evading arrest.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE